# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00395-CR

---

### Ex parte Damon Boyd

---

### FROM THE 427TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-20-300329, THE HONORABLE TAMARA NEEDLES, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Damon Boyd appeals the district court's order denying his pretrial application for writ of habeas corpus. *See* Tex. Code Crim. Proc. arts. 11.08, .24. Boyd was arrested on suspicion of having committed murder on February 23, 2020. He was found to be indigent, and the district court appointed counsel to represent him. Bail was set at $500,000, and Boyd was ordered to wear a GPS monitor while jailed.

In three issues, Boyd contends that: (1) the amount of his bail is excessive and is being used as an instrument of oppression; (2) his continued confinement during the COVID-19 pandemic violates his due-process rights; and (3) under article 17.151 of the Texas Code of Criminal Procedure, he should have been released on the 90th day of his confinement when the State was not ready for trial. *See id.* art. 17.151, § 1(1) (requiring that defendant accused of felony offense and detained pending trial must be released, either on personal bond or by bail reduction if State is not ready for trial within 90 days after commencement of detention). We will reverse the district court's order and remand this cause for further proceedings.

## BACKGROUND

On March 13, 2020, the Texas Supreme Court and Court of Criminal Appeals jointly issued the First Emergency Order Regarding the COVID-19 State of Disaster. *First Emergency Order Regarding the COVID-19 State of Disaster*, 596 S.W.3d 265, 265 (Tex. 2020). In part, the Order provided:

> Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent: . . . Modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted.

*Id.*

The Order was renewed as clarified and amended by the Twelfth Emergency Order issued on April 27, 2020. *Twelfth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 144, 144 (Tex. 2020). With respect to the above provision, the Twelfth Emergency Order specified only that the deadlines and procedures in certain proceedings under the Texas Family Code were among those Texas courts were authorized to modify or suspend. *Id.*

Because Boyd was arrested on February 23, 2020, the 90-day period under article 17.151 expired with respect to his pretrial detention on May 25, 2020.[1] On May 19, 2020, prior to the statutory deadline, the State filed a "Motion to Modify Article 17.151 Deadline." The district court granted the motion on May 21, 2020 and, citing the court's authority under the First

---

[1] In computing the length of the 90-day period, "the first day is excluded and the last is included." Tex. Gov't Code § 311.014(a). Boyd asserts that the period ended on Saturday, May 23, 2020. However, "[i]f the last day of any period" falls on a weekend or holiday, "the period is extended to include the next day that is not a Saturday, Sunday, or legal holiday." *Id.* § 311.014(b).

and Twelfth Emergency Orders, extended the article 17.151 deadline "to the date that is the 30th day after Governor Greg Abbott lifts the state of disaster that was declared by him on March 13, 2020, in relation to the COVID-19 pandemic."**2** On June 2, 2020, Boyd, citing article 17.151, filed a motion for release on personal bond or reasonable bail. The following day, he filed a pretrial application for writ of habeas corpus, requesting release on personal bond.

On June 8, 2020, Boyd was indicted for murder. The district court subsequently denied his motion and application. On July 6, 2020, Boyd filed an amended habeas application and a "Motion for Rehearing on Amended Pretrial Habeas Corpus." The district court denied the amended application, and this appeal followed.

## DISCUSSION

In his third issue, Boyd contends that under article 17.151 of the Texas Code of Criminal Procedure, he should have been released on personal bond or reduced bail on the 90th day of his confinement when the State was not ready for trial. *See* Tex. Code Crim. Proc. art. 17.151, § 1(1).**3**

---

**2** As of this writing, the Governor's state of disaster declaration has not been lifted.

**3** We begin with Boyd's third issue because it is dispositive of this appeal. Given our resolution of this issue, we need not address the others. *See* Tex. R. App. P. 47.1 (requiring appellate court to issue opinion that is as brief as practicable, addressing every issue raised and necessary to final disposition of appeal); *Ex parte Lopez*, No. 01-17-00586-CR, 2018 WL 3384636, at *6 n.8 (Tex. App.—Houston [1st Dist.] July 12, 2018, no pet.) (mem. op., not designated for publication) (noting that because appellate court sustained Lopez's first issue as to denial of his pretrial habeas corpus application it was unnecessary for court to reach his second issue); *Ex parte Venegas*, 116 S.W.3d 160, 165 (Tex. App.—San Antonio 2003, no pet.) (concluding that because appellate court sustained first issue determining that defendant was entitled to pretrial habeas relief when State was not ready for trial within 90 days of his detention, court did not need to reach his second issue).

"We review a trial court's decision to deny relief on a claim that the State violated article 17.151 for an abuse of discretion." *Ex parte Craft*, 301 S.W.3d 447, 448 (Tex. App.—Fort Worth 2009, no pet.) (citing *Jones v. State*, 803 S.W.2d 712, 719 (Tex. Crim. App. 1991)). A trial court abuses its discretion when its action is "arbitrary," "unreasonable," or outside the "zone of reasonable disagreement." *State v. Mechler*, 153 S.W.3d 435, 439–40 (Tex. Crim. App. 2005) (citing *Montgomery v. State*, 810 S.W.2d 372, 378–79 (Tex. Crim. App. 1990)). In reviewing the trial court's decision, we "view the evidence in the light most favorable to the ruling." *Craft*, 301 S.W.3d at 448–49. "A habeas applicant has the burden to plead facts which, if true, entitle him to relief and ultimately to establish those facts by a preponderance of the evidence." *Ex parte Sandoval*, 508 S.W.3d 284, 286 (Tex. Crim. App. 2016).

"Statutory construction is a question of law we review de novo." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). When interpreting a statute, "we must analyze the plain language of the provision enacted by the Legislature." *Ex parte Gill*, 413 S.W.3d 425, 429 (Tex. Crim. App. 2013). "[W]e read words and phrases in context and construe them according to normal rules of grammar and usage." *Stahmann*, 602 S.W.3d at 577. "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." *Gill*, 413 S.W.3d at 429. "We may look to extratextual sources only when the statute is ambiguous or the application of a statute's plain language would lead to absurd results that the Legislature could not possibly have intended." *Id.*

The Texas Supreme Court issued the emergency orders authorizing courts to modify or suspend statutory deadlines pursuant to its authority under subsection 22.0035(b) of the Texas Government Code:

4

Notwithstanding any other statute, the supreme court may modify or suspend procedures for the conduct of any court proceeding affected by a disaster during the pendency of a disaster declared by the governor. An order under this section may not extend for more than 90 days from the date the order was signed unless renewed by the chief justice of the supreme court.

Tex. Gov't Code § 22.0035(b).

We have previously concluded, in light of the plain language of subsection 22.0035(b), that "a defendant's preindictment jail detention—the subject of article 17.151"—is not "part of any 'court proceeding.'" *Ex parte Tucker*, No. 03-20-00372-CR, 2020 WL 7776448, at *7 (Tex. App.—Austin Dec. 31, 2020, no pet.) (mem. op., not designated for publication). As we explained:

Individuals may be arrested and released, and charges might not be pursued formally against them; thus, they are never part of any court proceeding. And a criminal "court proceeding"—that is, a criminal prosecution—progresses regardless of whether a defendant is jailed awaiting trial. *See* Criminal Proceeding, Black's Law Dictionary (11th ed. 2019) (defining "criminal proceeding" as "[a] judicial hearing, session, or prosecution in which a court adjudicates whether a person has committed a crime or, having already fixed guilt, decides on the offender's punishment; a criminal hearing or trial."); *see also Green v. State*, 872 S.W.2d 717, 730 (Tex. Crim. App. 1994) (contrasting grand-jury investigation conducted in secret from criminal prosecution).

*Id.* We do not believe our reading of the unambiguous, plain language in subsection 22.0035(b) leads to an absurd result that the Legislature could not have intended. *See Gill*, 413 S.W.3d at 429.

Following our decision in *Tucker*, the Court of Criminal Appeals held in *Ex parte Lanclos* that article 17.151 was suspended in part by a March 29, 2020 executive order. 624 S.W.3d 923, 927 (Tex. Crim. App. 2021); *see* The Governor of the State of Tex., Exec. Order No. GA-13, March 29, 2020, 45 Tex. Reg. 2368, 2369 (2020). The order provides that

"[a]rticle 17.151 of the Texas Code of Criminal Procedure is hereby suspended to the extent necessary to prevent any person's automatic release on personal bond because the State is not ready for trial." *Lanclos*, 624 S.W.3d at 927. The Court explained the limited nature of the suspension: "The executive order suspends Article 17.151 only to the extent that it calls for releasing defendants on personal bond. It does not suspend Article 17.151's release of defendants on bonds they can afford." *Id.*

The issues raised by the appellant in *Tucker* are identical to those here. In *Tucker*, as here, the State's brief omitted any reference to "court proceedings" in its discussion of subsection 22.0035(b), other than to quote the statute's text. *See* 2020 WL 7776448, at *7 n.9. Referencing the omission in *Tucker*, we noted, "No explanation is offered addressing how subsection 22.0035(b)'s authorization of modifications and suspensions to procedures for conducting 'court proceedings' applies to preindictment jail detentions in article 17.151. We are unpersuaded that it does." *Id.* at *7. Consequently, we concluded that "the deadline in article 17.151, section 1(1) of the Code of Criminal Procedure may not be extended by subsection 22.0035(b) of the Government Code."[4] *Id.*

Our interpretation of the meaning of "court proceeding" in subsection 22.0035(b) is supported by case law. One of our sister courts, considering the applicability of a subsequent emergency order to a property-redemption deadline under section 82.113 of the Texas Property Code, explained:

---

[4] The inapplicability of subsection 22.0035(b) to the deadline in article 17.151 was one of two holdings in *Tucker*. We also held that the State may not rely on an extension of an expired deadline under article 17.151 to continue detaining a defendant when the State was not ready for trial within the 90-day statutory period. *Ex parte Tucker*, No. 03-20-00372-CR, 2020 WL 7776448, at *7 (Tex. App.—Austin Dec. 31, 2020, no pet.) (mem. op., not designated for publication).

> Government Code Section 22.0035(b) authorizes the supreme court to "modify or suspend *procedures for the conduct of any court proceeding* affected by a disaster during the pendency of a disaster declared by the governor." Tex. Gov't Code Ann. § 22.0035(b) (emphasis added). Giving the statutory language its plain meaning, a "court proceeding" is necessarily a proceeding in which a party has invoked, or at least attempted to invoke, the power and authority of a court. Thus, "procedures for the conduct of any court proceeding" means procedures for pursuing some action *in court*.

*West Harwood 334B Land Tr. v. Clement*, No. 02-20-00216-CV, 2021 WL 1229973, at *5 (Tex. App.—Fort Worth Apr. 1, 2021, no pet.) (mem. op.).

Moreover, although the term "court proceeding" is not defined in the Texas Government Code, a prior version of the Texas Penal Code included within the offense of aggravated assault bodily injury—under certain circumstances—against a "participant in a court proceeding." *See* Act of June 13, 1979, 66th Leg., R.S., ch. 655, § 2(a), 1979 Tex. Gen. Laws 1520, 1521, *amended by* Act of June 19, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3619. Courts considering the meaning of "court proceeding" under that version of the statute understood the term to contemplate legal action occurring within the physical premises of a court. We find this analysis useful as a comparison in our present inquiry.

In *Stein v. State*, the defendant contended that a pending lawsuit did not constitute a "court proceeding." 689 S.W.2d 932, 936 (Tex. App.—Dallas 1985, pet. ref'd). Our sister court rejected the argument and held that the defendant had participated in a court proceeding:

> [C]omplainant had been involved in a "court proceeding" regarding the possession of the automobile. The evidence reflects that appellant became aware of the court proceeding when the automobile was taken from his driveway. He then proceeded to the court in which the lawsuit was filed, reviewed the docket sheet, and obtained the name and phone number of complainant. Clearly, the record reflects that a "court proceeding" was ongoing. Moreover, on the very day of the offense, complainant had made a court appearance regarding the repossession (after it had occurred) and the title to the automobile.

*Id.*

Similarly, the defendant in *Johnson v. State* argued that because an assault had occurred outside the court building, neither person involved had been a "participant in a court proceeding" at the time. 748 S.W.2d 562, 563 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). As the court explained:

> The evidence was uncontroverted that the assault occurred within moments from the time both [defendant] and the complainant were seen leaving the courtroom . . . . To meet its burden of proof under the statute, the State was required to prove only that [defendant] knowingly caused bodily injury to a participant in a court proceeding in retaliation for the injured person's having exercised or performed an official power or duty. The State was not required to prove that the assault occurred *during the actual court proceeding*.

*Id.* (emphasis added).

What is more, even were we to conclude that the meaning of "court proceeding" in subsection 22.0035(b) is ambiguous, the statute's legislative history and the Texas Supreme Court's emergency orders make clear that the modification and suspension authorized under the statute are intended to address the interruption of in-court proceedings caused by the impairment of physical infrastructure as a result of a disaster.

The statute was passed in response to the devastation wrought by Hurricane Harvey in 2017. Senate Comm. on State Affairs, Bill Analysis, Tex. S.B. 40, 86th Leg., R.S. (2019). Harvey and other "extreme weather events . . . delayed judicial proceedings and disrupted the operation of the state's judicial system due to damaged, unusable court buildings." Senate Comm. on the Judiciary & Civil Jurisprudence, Bill Analysis, Tex. S.B. 40, 86th Leg., R.S. (2019). The statute was intended to address calls for conferring additional authority on the courts to safely and practicably conduct proceedings by "authorizing judges to designate

8

alternate sites to conduct proceedings and by extending the maximum duration of an order to suspend or modify procedures for cases following such disasters." *Id.*

That the emergency orders were likewise intended to address the disruption to physical infrastructure resulting from the COVID-19 pandemic is evident in the nature of the additional measures for which the Texas Supreme Court vested courts with authority. Under the Twelfth Emergency Order, to limit the transmissibility of the virus in court facilities, Texas courts were empowered to allow parties, attorneys, witnesses, court reporters, and grand jurors to participate remotely; to "conduct proceedings away from the court's usual location"; to require participants in proceedings to alert the court if a participant was experiencing COVID-19 or flu-like symptoms; or to "[t]ake any other reasonable action to avoid exposing *court proceedings* to the threat of COVID-19." *Twelfth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d at 144–45 (emphasis added).

Unlike the "court proceedings" contemplated by *Stein*, *Johnson*, S.B. 40's legislative history, and the emergency orders, article 17.151 requires no hearing, evidentiary development, or in-person judicial action. The article is "mandatory." *Lanclos*, 624 S.W.3d at 927. Under the plain-language of the statute and absent the applicability of certain exceptions,[5] upon the expiration of the 90-day period, if the State is not ready for trial, a defendant who is detained in jail pending trial must be released on personal bond or by a reduction in bail. *See* Tex. Code Crim. Proc. art. 17.151, § 1(1); *see also Hernandez v. State*, 465 S.W.3d 324, 327 (Tex. App.—Austin 2015, pet. ref'd) (recognizing that trial court maintains discretion to revisit

---

[5] Neither party alleges in its briefing that a statutory exception applies to Boyd. *See* Tex. Code Crim. Proc. art. 17.151, § 2.

bond issue and, upon sufficient cause—including consideration of subsequent indictment—may reinstate original bond amount following release under article 17.151).

Here, the State was unready for trial at the expiration of the 90-day period because Boyd had not yet been indicted.[6] *See Lanclos*, 624 S.W.3d at 927 ("Without an indictment, the State cannot be ready for trial under Article 17.151."); *Craft*, 301 S.W.3d at 449 (observing that "without an indictment or waiver," trial court lacks jurisdiction to try case and, therefore, "the State could not have been ready"). Because we have held that article 17.151 may not be extended under subsection 22.0035(b), the district court's order granting an extension of the deadline was improper. *See Tucker*, 2020 WL 7776448, at *7. Upon the expiration of the 90-day period, the district court should have released Boyd by reducing the amount of bail required.[7] *See* Tex. Code Crim. Proc. art. 17.151, § 1(1); *Lanclos*, 624 S.W.3d at 927; *see also*

---

[6] The fact that Boyd was indicted after the expiration of the 90-day period does not alter our analysis. *See Ex parte Castlino*, No. 14-10-00110-CR, 2010 WL 2195829, at *2 (Tex. App.—Houston [14th Dist.] June 3, 2010, no pet.) (mem. op., not designated for publication) ("[T]he fact that appellant was subsequently indicted does not affect the applicability of article 17.151."). As our sister court has explained:

> The State also argues that because appellant has been indicted in this case, article 17.151 ceases to apply, thereby rendering his appeal moot. The State cites no authority for this proposition, and, in fact, the Court of Criminal Appeals has held that article 17.151 requires the State to be ready within 90 days of defendant's "arrest" or he (1) must be released on personal bond or (2) have bail reduced. *Jones v. State*, 803 S.W.2d 712, 717 (Tex. Crim. App. 1991); *see also Kernahan v. State*, 657 S.W.2d 433, 434 (Tex. Crim. App. 1983) (holding that the terms of article 17.151 are mandatory).

*Pharris v. State*, 196 S.W.3d 369, 373 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

[7] The sole remedy requested by Boyd in his amended application for writ of habeas corpus was release on personal bond. Although executive order GA-13 suspended article 17.151 to the extent that the statute calls for releasing defendants on personal bond, it left intact release on a bond the defendant can afford. *See* The Governor of the State of Tex., Exec. Order No. GA-13, March 29, 2020, 45 Tex. Reg. 2368, 2369 (2020); *Ex parte Lanclos*, 624 S.W.3d 923,

*Gill*, 413 S.W.3d at 430–31 ("Nothing in the mandatory language of article 17.151 precludes a judge from imposing a broad range of reasonable (and even creative) conditions of release designed to ensure victim and community safety like no contact orders, house arrest, electronic monitoring, or daily reporting."); *Pharris v. State*, 165 S.W.3d 681, 691 (Tex. Crim. App. 2005) (noting that bail is intended to ensure defendant's presence at trial and to ensure safety of community and victim while prosecution is pending). Consequently, the district court's denial of Boyd's application for writ of habeas corpus was an abuse of discretion. We sustain Boyd's third issue.

## CONCLUSION

Having sustained Boyd's third issue, we reverse the district court's order denying his pretrial application for writ of habeas corpus and remand this cause to the district court for further proceedings consistent with this opinion.

_____

Edward Smith, Justice

Before Justices Goodwin, Triana, and Smith

Reversed and Remanded

Filed: April 18, 2022

Do Not Publish

---

927 (Tex. Crim. App. 2021). Because the statute is "mandatory," the particular remedy requested by Boyd is inconsequential; when the State was not ready for trial at the end of the 90-day period, "the judge ha[d] only two options: either release the accused on personal bond or reduce the required bail amount." *Lanclos*, 624 S.W.3d at 927.